UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

JAMES N. FLEISCHMAN )
)
Plaintiff, )
)
v. )   Case No. 1:21-cv-00318
)
WYOMING COUNTY, WYOMING )
COUNTY COMMUNITY HEALTH SYSTEM, )
JOHN DOE(s) )
)
Defendants. )

**OPINION AND ORDER GRANTING PLAINTIFF'S CROSS-MOTION TO
STRIKE DOCUMENTS ATTACHED TO DEFENDANTS' MOTION TO
DISMISS AND GRANTING DEFENDANTS' MOTION TO DISMISS**
(Docs. 10 & 15)

Plaintiff James N. Fleischman brings this action against Defendants Wyoming
County, Wyoming County Community Health System ("Warsaw Hospital"),[1] and an
unnamed employee or employees of Warsaw Hospital designated as John Doe(s)
(collectively, "Defendants"), alleging he sustained emotional and reputational harm
stemming from an erroneous report that he had been involuntarily committed for mental
deficiencies or had otherwise been adjudicated as mentally defective. In his Verified
Complaint (the "Complaint"), Plaintiff alleges that John Doe(s) "is an employee at
Warsaw Hospital . . . and [t]he County of Wyoming at all times hereinafter mentioned,
and was acting within the scope of his/her employment and official capacity as a Warsaw

---

[1] Plaintiff "agrees that that Wyoming County Community Hospital lacks the capacity to be sued
and does not oppose the [D]efendants' request for dismissal of the hospital entity from this
action." (Doc. 15-1 at 2.) Plaintiff's Complaint uses "Wyoming County Community Health
System[,]" "Wyoming County Community Hospital[,]" and "Warsaw Hospital" interchangeably
to refer to the same entity. His claims against this entity are DISMISSED.

Hospital employee at the time of the incidents giving rise to this lawsuit." (Doc. 1 at 3, ¶ 10.)

Pending before the court is a motion to dismiss for failure to state a claim upon which relief can be granted filed by Warsaw Hospital and John Doe(s) pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 10). On May 17, 2021, Defendant Wyoming County joined in the pending motion to dismiss (Doc. 12). On June 11, 2021, Plaintiff opposed the motion, and on June 18, 2021, Warsaw Hospital and John Doe(s) replied, at which time the court took the pending motion under advisement. Plaintiff has also moved to strike the exhibits attached to the motion to dismiss (Doc. 15), which Defendants' opposed on June 18, 2021. In light of the dismissal of Warsaw Hospital as a party, the pending motion to dismiss will be evaluated only as to Defendants John Doe(s) and Wyoming County.

In his Complaint, Plaintiff asserts the following claims pursuant to 42 U.S.C. § 1983 against John Doe(s) and Wyoming County: violation of the Second and Fourteenth Amendment right to keep and bear arms; violation of the right to privacy under the U.S. Constitution; malicious prosecution; violation of Plaintiff's due process rights; and conspiracy to violate Plaintiff's constitutional rights. He also asserts the following claims under New York state law against John Doe(s) and Wyoming County: malicious prosecution; defamation; libel; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence; and negligent hiring, supervision, retention, and training.

Plaintiff asserts that Warsaw Hospital does not have standing to seek dismissal of the Complaint on behalf of the unnamed John Doe(s) but cites no authority to that effect. Because Warsaw Hospital may assert arguments on behalf of its unnamed employee, it has standing. *See Ruiz-Rivera v. United States*, 212 F. Supp. 3d 293, 295 (D.P.R. 2015) (defendant United States of America may bring motion to dismiss on behalf of a John Doe defendant); *Seagroves v. Corr. Corp. of Am.*, 2012 WL 2573468, at *1 (M.D. Tenn. July 3, 2012) (finding plaintiff's argument that defendant had no standing to seek dismissal of claims on behalf of a John Doe doctor was without merit).

Plaintiff is represented by R. Anthony Rupp, III, Esq. and Chad A. Davenport, Esq. Wyoming County is represented by James M. Wujcik, Esq. John Doe(s) and Warsaw Hospital are represented by Melissa M. Morton, Esq. and Sally J. Broad, Esq.

## I.     Plaintiff's Voluntary Dismissals.

### A.     Plaintiff's Voluntary Dismissal of his Claims One (Second Amendment Claim), Four (Due Process Claim), and Five (Conspiracy Claim).

Plaintiff agrees dismissal of his § 1983 Claim One (Violation of the Second and Fourteenth Amendment Right to Keep and Bear Arms) and Claim Four (Violation of Due Process) is appropriate and those claims are hereby DISMISSED.

Plaintiff also "agrees that Wyoming County . . . [cannot] be held liable for [his] conspiracy claim." (Doc. 15-1 at 11 n.2.) His § 1983 Claim Five (Conspiracy to Violate Constitutional Rights) is therefore DISMISSED against Defendants Wyoming County and John Doe(s) in their official capacity.[2]

### B.     Plaintiff's Voluntary Dismissal of his Punitive Damages Claim Against Wyoming County.

Plaintiff states that he "does not oppose the [D]efendants' request for dismissal of the Complaint's request for punitive damages against the municipality." (Doc. 15-1 at 4.) His request for punitive damages against Defendants Wyoming County and John Doe(s) is therefore DISMISSED.[3]

### C.     Plaintiff's Voluntary Dismissal of his *Monell* Claims Against Wyoming County.

Wyoming County seeks dismissal of Plaintiff's Complaint because municipal liability is not properly pled. It contends a municipality cannot be held liable under

---

[2] Claims brought against Wyoming County are duplicative of claims brought against John Doe(s) in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (U.S. 1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity").

[3] Plaintiff does not affirmatively seek to preserve his punitive damages claim against John Doe(s) in an individual capacity. He instead appears to have abandoned that claim. *See Javed v. Medgar Evers Coll. of the City Univ. of New York*, 2017 WL 4357138, at *4–5 (E.D.N.Y. Sept. 29, 2017) (dismissing claims as abandoned where plaintiff failed to respond to arguments in the motion to dismiss), *aff'd*, 724 F. App'x 73 (2d Cir. 2018), *as amended* (June 12, 2018).

§ 1983 for the actions of its employees pursuant to *respondeat superior* and that Plaintiff has failed to plausibly allege the existence of a custom, policy, or practice that caused his injuries.

"[L]ocal governments are responsible only for their *own* illegal acts[;] . . . [t]hey are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted) (emphasis in original). A municipality may be liable under § 1983 only "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Id.*

Plaintiff fails to allege the existence of an applicable policy, custom, or practice in his Complaint and "agrees [with Defendants] that the Complaint does not assert a claim for *Monell* liability." (Doc. 15-1 at 3.) Plaintiff's § 1983 claims against Wyoming County are therefore DISMISSED.

As all federal claims against Defendants Wyoming County and John Doe(s) in their official capacity have been dismissed, Plaintiff's remaining § 1983 claims will only be evaluated as to Defendant John Doe(s) in an individual capacity.

## II.     Allegations in the Complaint.

On or about November 26, 2019, Plaintiff visited Warsaw Hospital for a "stress test" which consisted of a treadmill exercise test and blood work, "along with other more nuanced medical tests and procedures[,]" in order to evaluate his heart and blood circulation performance and his tolerance for exercise. (Doc. 1 at 4, ¶ 18) (internal quotation marks omitted). Warsaw Hospital did not test Plaintiff for mental deficiencies, nor did its staff express any concerns to Plaintiff regarding his mental health. Warsaw Hospital's records regarding Plaintiff's November 26, 2019 visit do not refer to any mental deficiencies or involuntary hospitalization.

4

On the same day as his stress test, Plaintiff alleges that a Warsaw Hospital employee or employees, designated as Defendant John Doe(s) in his Complaint, "communicated to [t]he New York State Office of Mental Health ('NYSOMH') false and disparaging statements regarding the mental health of [Plaintiff]", *id.* at 5, ¶ 22, consisting of a report that Plaintiff "had been involuntarily committed for mental deficiencies and/or . . . adjudicated as mentally defective on or around November 26, 2019." *Id.* at ¶ 23. This information was then conveyed by NYSOMH to the New York State Division of State Police ("NYSP"), who, in turn, notified Wyoming County Clerk, Rhonda Pierce, via letter that Plaintiff "ha[d] been either: 1) adjudicated as a mental defective; or 2) involuntarily committed to a mental institution." *Id.* at ¶ 25. The letter included Plaintiff's full name, date of birth, address, and pistol permit information. "Under federal law, a person [who has been adjudicated as a mental defective or is involuntarily committed to a mental institution] is prohibited from possessing a firearm, rifle[,] or shotgun under 18 U.S.C. [§] 922(g)(4)." *Id.*

On November 27, 2019, Defendant Wyoming County filed an "Order to Show Cause and Interim Order" (the "Order") requesting the suspension of Plaintiff's pistol permit and compelling him to surrender all firearms in his possession. *Id.* at 6, ¶ 27 (internal quotation marks omitted). The Order stated that Plaintiff was "likely to engage in conduct that will cause serious harm to self or others." (Doc. 1 at 6, ¶ 28) (internal quotation marks omitted). That same day, Wyoming County Court Judge Michael M. Mohun signed the Order, and on December 2, 2019, the Wyoming County Sheriff's Office seized Plaintiff's pistol permit and handgun.

Plaintiff retained an attorney to respond to the Order. On December 19, 2019, Plaintiff's attorney contacted "the Office of NICS Appeals and SAFE Act" to inquire about the basis for the suspension of his pistol permit and the seizure of his permit and handgun. *Id.* at ¶ 32. On December 30, 2019, the Office of NICS Appeals and SAFE Act replied as follows:

> This office is in receipt of the identifying documents and consent for [Plaintiff]. The records maintained in this office indicate that he was

involuntarily hospitalized on 11-14-19 that was reported to the federal
NICS data base[.]

*Id.* at ¶ 33.

Plaintiff asserts that he did not go to Warsaw Hospital on November 14, 2019 but
"did go to his physician's office for a blood draw [that day], with the results contained in
the Warsaw Hospital records for his stress test." *Id.* at 7, ¶ 35. He further alleges that "the
Office of NICS Appeals and SAFE Act's belief that [Plaintiff] was involuntarily
hospitalized on November 14, 2019 was based solely on the erroneous and defamatory
statement of Warsaw Hospital employee(s) John Doe(s) regarding [Plaintiff's] 'stress
test' in November, 2019." *Id.* at ¶ 36.

On January 2, 2020, Plaintiff's attorney responded to the Office of NICS Appeals
and SAFE Act and submitted a December 19, 2019 affidavit from James N. Fleischman;
a December 2, 2019 note from Plaintiff's family doctor, Sydney Domanowski, DO; and
Plaintiff's medical records from Warsaw Hospital regarding the November 26, 2019
stress test. The note from Dr. Domanowski stated as follows:

> [Plaintiff] is under my care as his primary care physician. I have no
> concerns regarding his mental hygiene and do NOT believe he is a person
> "likely to engage in conduct that will cause serious harm to self or others."
> Throughout my interactions with him no concerns regarding mood,
> depression, anxiety, anger, or mental instability have arisen.

*Id.* at ¶ 38.

Upon receiving Plaintiff's submission, on January 15, 2020, Defendant Wyoming
County sent a letter to Judge Mohun indicating that it did not object to or oppose the
reinstatement of Plaintiff's pistol permit. On January 24, 2020, Judge Mohun signed a
"Termination of Order of Suspension" which terminated the suspension of Plaintiff's
pistol permit and ordered the return of his handgun. (Doc. 1 at 8, ¶ 40) (internal quotation
marks omitted). On January 27, 2020, Plaintiff's permit was restored.

Plaintiff alleges he suffered severe emotional and psychological distress but that
he is reluctant to seek necessary medical treatment due to "a constant fear and worry that
Defendants will further defame his character and reputation and further violate his
Constitutionally-protected rights." *Id.* at ¶ 43. He also asserts that he "has been compelled

6

to retain the services of counsel to protect and enforce his rights, and therefore, . . . has incurred and continues to incur attorneys' fees, expert fees, and costs[.]" *Id.* at ¶ 44.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

### B. Whether the Court Should Strike Exhibits Attached to the Motion to Dismiss.

Plaintiff contends that the inclusion of Exhibits A and B as attachments to the motion to dismiss is an improper attempt to present matters outside of the pleadings and, on that basis, moves to strike them. John Doe(s) respond that, in analyzing a motion to

dismiss for failure to state a claim, the court considers not only the facts alleged in the complaint, but also "any written instrument attached to [the complaint] as an exhibit[,]" "documents incorporated in [the complaint] by reference[,]" and any documents considered "integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted).

A document is "'integral'" to the complaint if the complaint "'relies heavily upon [the document's] terms and effect[.]'" *Id.* at 230 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "This generally occurs" when the incorporated material is a "legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* at 231 (internal quotation marks and citation omitted). A plaintiff's "mere notice" of the document or "possession" of it is insufficient to render a document integral to a complaint. *Id.* (citation omitted). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

### 1.  Exhibit A.

Exhibit A is a resolution of the Wyoming County Board of Directors which establishes that Warsaw Hospital is owned by the County of Wyoming. (Doc. 10-2 at 2.) As Warsaw Hospital has been dismissed from this action, it is unnecessary for the court to consider Exhibit A. Plaintiff's request to strike Exhibit A is therefore GRANTED.

### 2.  Exhibit B.

Exhibit B includes a police report regarding the confiscation of Plaintiff's handgun; a Termination of Order of Suspension stating that Plaintiff's handgun must be returned; a "Handgun Purchase Coupon" stating that Plaintiff's handgun would be returned to him; and a property receipt from the Wyoming County Sheriff's Office stating that the handgun had been returned. (Doc. 10-3.)

As there is no evidence before the court that Plaintiff consulted any of these documents in drafting his Complaint and because several of these documents merely duplicate his factual allegations, none of the documents need be considered on a motion to dismiss. Plaintiff's motion to strike Exhibit B is therefore GRANTED.

### C.   Whether Plaintiff's Claims are Moot.

John Doe(s) argue that Plaintiff's claims are moot because his pistol permit has been reinstated and his handgun has been returned. "Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" *Blackwelder v. Safnauer,* 866 F.2d 548, 550 (2d Cir. 1989) (citing *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)). A case becomes moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Id.* at 551 (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)); *see also Jefferson v. Abrams,* 747 F.2d 94, 96 (2d Cir. 1984). When this occurs, the case or controversy requirement is not satisfied, and a federal court lacks subject matter jurisdiction over the action. *Blackwelder,* 866 F.2d at 550; *Jefferson,* 747 F.2d at 96; *see also Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

While a request for injunctive relief may be moot, Plaintiff seeks damages for the alleged deprivation of his constitutional and state law rights. "If there is any chance of money changing hands, [Plaintiff's] suit remains live." *Mission Prod. Holdings, Inc. v. Tempnology, LLC,* 139 S.Ct. 1652, 1660 (2019); *see also Grimm v. Gloucester Cnty. Sch. Bd.,* 972 F.3d 586, 604 (4th Cir. 2020) ("[P]lausible claims for damages defeat mootness challenges."). Plaintiff alleges that he was designated as having "been involuntarily committed for mental deficiencies and/or . . . adjudicated as mentally defective" which resulted in the temporary deprivation of his right to possess a firearm and caused him emotional distress and reputational damages for which he seeks monetary compensation. (Doc. 1 at 5, ¶ 23.) Against this backdrop, dismissal of his Complaint on mootness grounds is not warranted.

9

**D.    Whether John Doe(s) are Entitled to Statutory Immunity.**

John Doe(s) assert that N.Y. Mental Hygiene Law § 9.46 provides statutory immunity for those mental health professionals who are required to submit reports pursuant to the law. In relevant part, the statute states: "The decision of a mental health professional to disclose or not to disclose in accordance with this section, *when made reasonably and in good faith*, shall not be the basis for any civil or criminal liability of such mental health professional." N.Y. Ment. Hyg. § 9.46(d) (emphasis supplied). John Doe(s) do not cite to any precedent regarding immunity determinations under the statute but instead ask the court to determine the issue of good faith as a matter of law. In doing so, they characterize the deprivation of Plaintiff's firearm and pistol permit as the product of a coding error. Plaintiff's Complaint does not contain this factual allegation.

Because the court cannot determine at this time that John Doe(s) acted reasonably and in good faith, dismissal on statutory immunity grounds would be premature.

**E.    Whether John Doe(s) are Entitled to Qualified Immunity.**

John Doe(s) contend that the doctrine of qualified immunity bars the instant suit because Plaintiff alleges nothing more than a mere coding error. When a government official is sued in his or her individual capacity, qualified immunity shields that official "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Manganiello v. City of New York,* 612 F.3d 149, 164 (2d Cir. 2010) ("A government official sued in his individual capacity is entitled to qualified immunity . . . if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred[.]").

Qualified immunity protects government officials from lawsuits arising from good faith errors made while reasonably performing their duties, whether resulting from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S.

10

551, 567 (2004) (Kennedy, J., dissenting)). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis in original). As a result, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

To determine whether a right is clearly established, courts in the Second Circuit look to "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question[;] and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer,* 616 F.3d 100, 105 (2d Cir. 2010). This standard ensures that "all but the plainly incompetent or those who knowingly violate the law" will be protected by qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

A qualified immunity defense may ultimately "rest on an evidentiary showing of what the defendant did and why." *Black Lives Matter v. Town of Clarkstown,* 354 F. Supp. 3d 313, 326 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). In this case, based on the limited information before it, the court cannot conclude that John Doe(s)'s actions constituted a reasonable mistake in coding by an employee who was acting in good faith. *See Cornejo v. Bell*, 592 F.3d 121, 124 (2d Cir. 2010) (explaining that qualified immunity exists where "the employee was acting in subjective and objective good faith"); *see also Pulizotto v. McMahon,* 406 F. Supp. 3d 277, 296 (S.D.N.Y. 2019) (determining that a qualified immunity defense was not established as a matter of law at the motion to dismiss phase). Plaintiff's Complaint does not characterize the incident in this manner. To the contrary, Plaintiff alleges John Doe(s)'s communications about him to NYSOMH were "false and disparaging statements regarding [his] mental health[.]" (Doc. 1 at 5, ¶ 22.) In the absence of a factual record establishing a reasonable and good faith mistake, Plaintiff's Complaint cannot be dismissed against John Doe(s) on qualified immunity grounds. *See Vasquez v. Maloney,*

990 F.3d 232, 243 (2d Cir. 2021) (determining that on the limited factual record before the court, a finding of qualified immunity was not warranted).

**F.     Whether Plaintiff Plausibly Pleads a § 1983 Right to Privacy Claim Against John Doe(s).**

In Claim Two of his Complaint, Plaintiff alleges that his constitutional right to privacy was violated "[a]s a direct result of the report erroneously filed" with NYSOMH (Doc. 1 at 10, ¶ 53) which allegedly "conveyed that [Plaintiff] had been involuntarily committed for mental deficiencies and/or that [Plaintiff] had been adjudicated as mentally defective on or around November 26, 2019." *Id.* at 5, ¶ 23. This allegedly resulted in the "transmitt[al of] Plaintiff's personal health information to numerous third-parties" including "other state actors[.]" *Id.* at 10, ¶ 53-54. This "false information" about Plaintiff was "repeated and publicized" in the Order and other documents. *Id.* at ¶ 55.

A right to privacy is "implicit in the concept of ordered liberty protected by the [Due Process Clause of the] Fourteenth Amendment." *Nassau Cnty. Emp. "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 301 (E.D.N.Y. 2004) (citations omitted). The right to privacy includes an "interest in avoiding disclosure of personal matters[.]" *Whalen v. Roe*, 429 U.S. 589, 599 (1977). "Extension of the right to confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994).

Nonetheless, "the interest in the privacy of medical information will vary with the condition." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) (noting that the privacy interest increases with conditions "likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others"). The privacy interest in a medical condition is determined "on a case-by-basis." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 66 (2d Cir. 2011). The Second Circuit has "focused [its] constitutional analysis on whether revealing one's condition would expose a person 'not to understanding or compassion but to *discrimination* and *intolerance*.'" *Id.* at 67 (citing *Doe*, 15 F.3d at 267) (emphasis in original).

"[I]nformation about a person's psychiatric health and substance-abuse history in particular[] is information of the most intimate kind." *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) (finding teacher had protected privacy right in medical records sought by school board, which included a request to release records of substance abuse treatment for a thirteen-year period). John Doe(s) erroneously reported that Plaintiff "had been involuntarily committed for mental deficiencies and/or that [Plaintiff] had been adjudicated as mentally defective" (Doc. 1 at 5, ¶ 23), a condition that would likely subject him to "discrimination and intolerance." *Doe*, 15 F.3d at 267. Plaintiff therefore has alleged a plausible privacy interest in the information conveyed.

John Doe(s) assert the report in question was submitted pursuant to the mandatory reporting obligations for health care providers set forth in N.Y. Mental Hygiene Law § 9.46(b) and that, at best, there was a mere coding error in its transmittal. The disclosure of private mental health information to "representatives of the State having responsibility for the health of the community . . . does not automatically amount to an impermissible invasion of privacy." *Whalen*, 429 U.S. at 602; *see also Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 66 (2d. Cir. 2018) (noting the importance of whether an alleged privacy violation occurred as the result of "a legislative scheme that has passed constitutional muster"). Plaintiff does not dispute that John Doe(s) transmitted the report pursuant to their statutory obligation but appears to assert that the existence of such an obligation does not automatically negate liability. Even if this were true, Plaintiff must still plausibly plead John Doe(s) acted with a culpable mental state beyond mere negligence. The Second Circuit has noted that actions which are "totally arbitrary[,]" "malicious[,]" or indicative of "deliberate indifference[,]" depending on the context, may be sufficient to constitute the requisite mental state. *Hancock*, 882 F.3d at 68 (internal quotation marks omitted).

Plaintiff alleges that John Doe(s)'s transmittal of the report was "erroneous" multiple times in his Complaint. (Doc. 1 at 7, ¶ 36; 10 ¶ 53.) Although Plaintiff contends that negligent conduct may form the basis of his right to privacy claim because § 1983 "contains no state-of-mind requirement independent of that necessary to state a violation

of the underlying constitutional right[,]" (Doc. 15-1 at 8), a § 1983 right to privacy claim may not be predicated on merely negligent conduct. *See Hancock*, 882 F.3d at 65-66 (finding that "mere negligence is not enough" when evaluating executive action in the context of a right to privacy claim involving medical records) (internal quotation marks, alterations, and citation omitted); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."). Beyond conclusory allegations, Plaintiff has not plausibly alleged John Doe(s) were more than negligent. *See Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 241 (S.D.N.Y. 2009) (ruling "even if [defendant's] decision was careless, or baseless, or even irrational, that is not enough to make out a violation of Plaintiff's constitutional right to privacy.") (internal citation omitted); *Johnson v. Scotts Bluff Cnty. Sheriff's Dep't*, 245 F. Supp. 2d 1056, 1060 (D. Neb. 2003) (granting motion to dismiss where plaintiff was "plainly inconvenienced, embarrassed, and distressed by the results of the defendants' sloppy electronic record-keeping [which led to plaintiff's false arrest], but her plight is simply not severe enough to state a claim as a constitutional tort").

Without plausibly alleging John Doe(s) acted with the requisite mental state, Plaintiff has not pled a violation of his constitutional right to privacy. *See Jackson v. Ramirez*, 2016 WL 796854, at *9 (S.D.N.Y. Feb. 22, 2016), *aff'd*, 691 F. App'x 45 (2d Cir. 2017) ("Most critically, plaintiff has not alleged any facts that allow the Court to infer that [defendant] acted with a culpable mental state in disclosing his medical information.").[4]

---

[4] *See also Vergara v. Vogliano*, 1997 WL 86388, at *3 (S.D.N.Y. Feb. 28, 1997) (observing exposure of patient's medical file did not amount to an allegation of the requisite mental state for purposes of a constitutional right to privacy claim); *Spencer v. Bellevue Hosp.*, 2012 WL 1267886, at *9 (S.D.N.Y. Apr. 12, 2012) (granting motion to dismiss because plaintiff's allegation that hospital employee Jane Doe "loudly announced confidential information regarding [plaintiff's] stay at [hospital,]" including medications given to plaintiff after having been involuntarily committed, would fail as a § 1983 right to privacy claim).

For the foregoing reasons, Plaintiff's § 1983 right to privacy claim is DISMISSED.

**G.      Whether Plaintiff Plausibly Pleads a § 1983 Malicious Prosecution Claim Against John Doe(s).**

In Claim Three of his Complaint, Plaintiff alleges that John Doe(s)'s erroneous report resulted in the Order that suspended Plaintiff's pistol permit and required him to surrender any firearms in his possession. Plaintiff states that "[b]ut for [D]efendants' unlawful and malicious conduct, [Plaintiff] would not have been prosecuted regarding his legal ability to carry a firearm due to his mental health." (Doc. 1 at 12, ¶ 67.)

To state a § 1983 claim for malicious prosecution, Plaintiff must allege "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment[,]" as well as that "criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor." *Lanning v. City of Glens Falls,* 908 F.3d 19, 24 (2d Cir. 2018) (internal quotation marks and citations omitted). State tort law may "serve[ ] only as a source of persuasive authority . . . in defining the[ ] elements" of the federal claim. *Id.* at 25.

After Plaintiff's firearm and pistol permit were confiscated from him, Judge Mohun signed a "Termination of Order of Suspension" and ordered the return of both items. (Doc. 1 at 8, ¶ 40) (internal quotation marks omitted). While the alleged proceedings initiated against Plaintiff were terminated in his favor, he has not plausibly alleged that the unnamed employee(s) of Warsaw Hospital designated as John Doe(s) played a role in those proceedings. Generally, to initiate a prosecution, a defendant must "do more than report the crime or give testimony." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). A defendant "must 'play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Id.* (quoting *Rohman v. N.Y.C. Transit Auth.,* 215 F.3d 208, 217 (2d Cir. 2000)) (alteration in original). "A jury may permissibly find that a defendant initiated a prosecution where he 'fil[ed] the charges' or 'prepar[ed an] alleged false confession and forward[ed] it to

15

prosecutors.'" *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997)) (alterations in original).

While John Doe(s) allegedly made an erroneous report regarding Plaintiff's mental health status, he or she is not alleged to have "play[ed] an active role in the prosecution[.]" *Manganiello*, 612 F.3d at 163 (internal quotation marks omitted). Indeed, Plaintiff does not allege John Doe(s) filed charges or had any contact with a party other than NYSOMH. *Cf. Ricciuti*, 124 F.3d at 130 (noting that a Transit Police Lieutenant started a prosecution by "filing the charges of second-degree assault"). Plaintiff's § 1983 claim alleging malicious prosecution must therefore be DISMISSED.

**H.    Whether Plaintiff Plausibly Pleads a § 1983 Conspiracy Claim Against John Doe(s).**

To state a § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between two or more state actors . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999).

In support of his conspiracy claim, Plaintiff alleges that all Defendants "conspired amongst themselves to falsely allege that [Plaintiff] was mentally deficient and not legally capable of carrying a firearm" and that they "agreed to deprive" Plaintiff of his constitutional rights. (Doc. 1 at 14, ¶ 84-85.) The Complaint does not contain anything beyond "naked assertion[s]" and "conclusory statements" and consists of "a formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted) (first alteration in original). His § 1983 conspiracy Claim Five against John Doe(s) must therefore be DISMISSED. *See Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir. 2011) ("It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (internal quotation marks and citation omitted).

## I.   Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims.

In Claims Six through Twelve, Plaintiff alleges state law tort claims of malicious prosecution; defamation; libel; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence; and negligent hiring, supervision, retention, and training against Defendants John Doe(s) and Wyoming County.

Because Plaintiff's federal claims have been dismissed, exercising supplemental jurisdiction over his remaining state law claims would be inappropriate. *See Drake v. Vill. of Lima*, 530 F. Supp. 3d 285, 294-95 (W.D.N.Y. 2021) (finding that "given the early stage of the proceedings" and "the fact that the remaining causes of action involve quintessential areas of state law[,]" it was appropriate for the district court to decline to exercise supplemental jurisdiction over plaintiff's remaining state law causes of action once the federal claims were dismissed).

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Id.* at 294 (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014)) (internal quotation marks omitted); *see also Edmonds v. Seavey,* 379 F. App'x 62, 64 n.1 (2d Cir. 2010) ("As there existed no independent basis for subject matter jurisdiction over appellant's remaining state law claims, the district court was well within its discretion to decline to exercise supplemental jurisdiction over those claims.") (citing *Matican v. City of New York,* 524 F.3d 151, 154-55 (2d Cir. 2008)). The court therefore DISMISSES Plaintiff's state law claims.

## J.   Leave to Amend.

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and instructs that "[t]he court should freely give leave when justice so requires." "'[T]he usual practice is to grant leave to amend the complaint'" when the court has granted a motion to dismiss. *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). However, leave to amend "should generally be denied

in instances of futility, undue delay, bad faith[,] or dilatory motive[.]" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016).

Because Plaintiff concedes that John Doe(s)'s transmittal of the report was erroneous and he has not plausibly alleged that John Doe(s) initiated a prosecution or conspired with others against him, it is not clear that Plaintiff can state a plausible § 1983 claim for relief. The deficiencies with Plaintiff's claims appear to be substantive, rather than defects that can be cured by better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that the "problem with [plaintiff's] causes of action is substantive; better pleading will not cure it" and in such cases "[r]epleading would thus be futile" and "[s]uch a futile request to replead should be denied").

Plaintiff did not seek leave to amend his Complaint in light of the pending motion to dismiss and "has not suggested that he is in possession of any facts that might cure the deficienc[ies]" in his Complaint. *Bhanusali v. Orange Reg'l Med. Ctr.*, 2012 WL 13059694, at *10 (S.D.N.Y. Jan. 20, 2012). The court therefore does not grant leave to amend *sua sponte*. Plaintiff may nonetheless petition for leave to file an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and the court's Local Rules within twenty (20) days of this Opinion and Order. In doing so, he must explain how his proposed Amended Complaint alleges a plausible claim for relief. If he does not petition for leave to amend within the twenty (20) day deadline, this action will be dismissed.

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's cross-motion to strike documents attached to the motion to dismiss (Doc. 15) and GRANTS Defendants' motion to dismiss (Doc. 10). Any petition for leave to file an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and the court's Local Rules must be filed within twenty (20) days of the date of this Opinion and Order. If Plaintiff does not petition for leave to amend within the twenty (20) day deadline, this action will be dismissed.
SO ORDERED.

Dated this _15th_ day of December, 2021.

Christina Reiss, District Judge
United States District Court